**Thomas E. Beck SBN 81557**
THE BECK LAW FIRM
P.O. BOX 101
Los Alamitos, CA 90720

Tel: 562 795-5835

Email: thebecklawfirm@gmail.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN ABELAR<br><br>                Plaintiff,<br><br>     vs.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFFS DEPARTMENT, DEPUTY YEN LIU, individually and as a peace officer, DOES 1-10,<br><br>                Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES**<br>1. Violation of Civil Rights (42 U.S.C. §1983)<br>2. *Monell* Claim (42 U.S.C. §1983)<br>3. Failure to Supervise (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1.     Jurisdiction of this court is invoked under 28 U.S.C. §§ 1343, (1), (2), (3) and (4). This action at law for money damages arises under Title 42 U.S.C. Section 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the Fourth, and Fourteenth Amendments of the United States Constitution.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2.     At all times herein mentioned, Plaintiff ADRIAN ABELAR, age 28,

was a resident of the County of Los Angeles, City of Montebello.

3.      At all times herein mentioned, Defendants DEPUTY YEN LIU, individually and as a peace officer, DOES 1-10, inclusive and each of them, were employees of the County of Los Angeles and the Los Angeles County Sheriffs Department assigned to Temple City Station Patrol.

4.      Defendants COUNTY OF LOS ANGELES (hereinafter referred to as ("COUNTY") and LOS ANGELES COUNTY SHERIFF DEPARTMENT (LASD) are  and at all times herein mentioned have been  public entities. COLA is an incorporated county duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of Defendant Los Angeles County Sheriffs Department, (LASD) and particularly said Department's Field Services, Patrol, criminal and Internal Investigations and Training and Personnel Divisions and other operations and subdivisions presently unidentified to Plaintiff, and their tactics, methods, practices, customs and usages related to crime investigations, internal investigations, personnel supervision and records maintenance, training and education in the use and deployment of deadly weapons, the uses of force, and powers of arrest by its rank and file.

5.      Plaintiff is informed and believe and thereon allege that each of the Defendants designated as a DOE is intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.  The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to Plaintiff who therefore sues said Defendants by such fictitious names and will be added to this

action as provided by California Code of Civil Procedure Section 484 and Federal Rule of Civil Procedure 15.

6.    Defendants, and each of them, did the acts and omissions hereinafter alleged, intentionally, with knowledge that their conduct violated well established and settled law.

7.    The incident complained of began on the afternoon of September 21, 2021 in the City of Rosemead, County of Los Angeles.  Plaintiff and his girlfriend Aubrey Herrera were at J & R Auto 2132 San Gabriel Blvd where Plaintiff's black 2009 Mazda 6 vehicle's wheel bearings were being repaired. The vehicle's left front wheel was had been raised and held up by a jack. The wheel, tire and brakes had been removed. Another vehicle was parked immediately behind Plaintiff's.  It was in this immobile position awaiting completion of the service when an unidentified Los Angeles County deputy sheriff (Deputy 1) approached ABELAR while seated behind the wheel of his Mazda with Ms. Herrera seated in the front passenger seat. Approximately an hour earlier, the proprietor of J & R Auto shop Richard Doktor telephoned the Temple Station Watch Commander Lt. Mah to remind Mah of how thankful he was for past help from LASD and  reported to Mah that Plaintiff allegedly "flew into the back of is business" and demanded repairs be done quickly because there was allegedly a murder warrant in existence for Plaintiff and he was being looked for by law enforcement. Doktor reported he did not want Plaintiff on his premises. Lt. Mah assured Doktor a call would go out for deputies to respond. Lt. Mah instructed Temple City Deputy Van Dine to dispatch deputies and classify the incident as "925/415" meaning a suspicious person and disturbance. Deputy Van Dine dispatched the call as directed. Fifty minutes later, Doktor again called Temple Station this time sounding annoyed demanding to know where deputies were as no one from law enforcement had yet shown up. This time he reported that the warrant

was allegedly for attempted murder and demanded deputies remove Abelar from his business.

Deputies, including Defendant LIU, arrived at the reporting party's shop and made contact with Doktor. The deputies were directed to Plaintiff's Mazda. The deputy on Plaintiff's side of the vehicle (Deputy 1, male) asked the occupants for ID. Abelar informed the deputy that he did not have it on him. At the same time, a second deputy (Deputy 2, male) made contact with Ms. Herrera who correctly identified herself. Albelar correctly informed Deputy 1 of his name, spelling it out emphasizing "B as in boy" and provided the correct date of birth. Deputy 1 identified only as "Temple 54", proceeded to provide a Sheriffs Communications Center (SCC) dispatcher the incorrect spelling of Plaintiff's name, employing a "V" rather than the "B" in Abelar as Plaintiff had emphasized earlier. The deputy also provided two "L"s further mistaking the spelling of Plaintiff's name and inexplicably made a change to the date of birth Plaintiff gave him. Dispatch asked the deputy to confirm his subject was "Abelar." While Deputy 1 was engaged with dispatch, Deputy 2 on the passenger side directed the occupants to keep their hands in sight. Plaintiff and Ms. Herrera complied. Deputy 1 engaged Plaintiff in conversation, inquiring if he'd had an appointment to repair his car. Plaintiff told him he did not but that the "tall heavy set white guy" "let us come over here." Dispatch then informed Deputy 1 that there was a warrant found for an Adrian Abelar who lived in Whittier with a different date of birth than Deputy 1 provided. Asked again for his ID, Plaintiff informed Deputy 1 that his ID was being held in the office of the shop. At this moment, Deputy 1 ordered Plaintiff out of his car. Defendant LIU, a female deputy, stood by on the passenger side of the Mazda.

As plaintiff complied with Deputy 1's direction to exit, he discarded a handgun, tossing it away from himself and the Mazda. Noting the weapon, Deputy 1 shouted loudly "got a gun" "gun" repeatedly. Deputy 1 forcibly grabbed Plaintiff and shoved him face first to the ground. Deputy 1 held Plaintiff down with body

weight on plaintiff's back and was applying a handcuff to Plaintiff's right wrist at which time Defendant LIU and only LIU intentionally fired one round into Plaintiff's neck and upper back, fracturing his first, second and third thoracic vertebrae, fracturing plaintiff's 1st and third ribs and contused the upper lobe of his right lung. LIU's shot nearly struck and endangered Deputy 1. At the moment LIU fired her weapon, Plaintiff was visibly unarmed, unthreatening, compliant and controlled for handcuffing. Plaintiff was at that time extending his free left hand away from his body as directed while Deputy 1 controlled his right arm and hand. LASD body worn camera (BWC) footage confirms Plaintiff's firearm at no time was a threat or menace to anyone. Instead, the weapon was  touched briefly while being thrown and was never held or pointed in a threatening manner or position that would enable Plaintiff to shoot at anyone, including near by deputies,  reporting party Doktor, J & R employees and customers who witnessed the event. Body worn camera footage captured Plaintiff to remark "I threw it." The shooting was also captured by 3 of Doktor's business surveillance cameras.

When LIU shot Plaintiff, Doktor made it known to her that he had seen what she had done and told LIU she should not have done that as Plaintiff was no threat. LIU responded by aggressively threatening Doktor to "mind his own business" to which Doktor responded "You gonna shoot me too?"

Plaintiff was gravely injured. Medical aid was promptly administered at the scene. Los Angeles County Paramedics stabilized Plaintiff for transport to County USC Medical Center in East Los Angeles as a prisoner. Plaintiff underwent multiple surguries and remained hospitalized until November 9, 2021.  Plaintiff continued medical and theraputic care thereafter.

Shortly after the shooting, Doktor, his employee witnesses and customers were removed from the premises by LASD and transported to Temple Station as "witnesses" yet after 4 hours, none were approached or questioned by any member of law enforcement and have never been. Doktor refused to remain and returned to

his shop with his employees. Upon arrival at J & R Auto, LASD had not only the business taped off, but the entire block on the east side of San Gabriel Blvd. Investigators approached Doktor inquiring about the surveillance cameras on his shop and premises. Doktor directed them to a video recording device in his office which the investigators removed. Several months later, the recorder was returned but blank in that all the media that existed when it was taken disappeared. LASC Homicide opened an investigation under File Number 21-10833-05. Plaintiff is informed and believes the lead investigator is Hardiman. As of the date of the filing of this action, Plaintiff is informed and believes that said investigation has been corruptly discharged and purposefully delayed in an effort to shield LIU from her wrongful use of deadly force. Los Angeles County's Officer Involved Shooting (OIS) oversight organ, Justice System Integrity Division (JSID) has not been provided with the shooting investigation for review of Defendant LIU's use of deadly force for 19 months.

No criminal charges were filed against Plaintiff as a result of this incident. Although Plaintiff was kept in custody in the LAUSC jail ward (13th floor) for the duration of his medical treatment, Plaintiff is informed and believes he was not booked by LASD for any criminal offense stemming from this incident as part and parcel of the effort to keep attention away from the use of force and cover up the unwarranted shooting.

Upon completion of his medical treatment, Plaintiff was released from custody. However, while in treatment at County USC Medical Center, he was consistently denied visitation from family members and friends.

## FIRST CAUSE OF ACTION

**(VIOLATION OF CONSTITUTIONAL RIGHTS - UNREASONABLE SEARCHES & SEIZURES, UNREASONABLE FORCE, FALSE IMPRISONMENT, DUE**

**PROCESS DEPRIVATIONS, AND CONSPIRACY - 42 U.S.C. § 1983)**

**(By Plaintiff Against All Individual Defendants)**

8.      Plaintiff refers to and re-pleads each and every allegation contained in paragraphs 1 through 7 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

9.      This action at law for money damages arises under Title 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the Fourth, and Fourteenth Amendments of the United States Constitution.

10.     Commencing at or about the aforementioned date and place, without lawful cause or justification, and while acting under color of law, Defendant YEN LIU individually and as a peace officer, intentionally and maliciously deprived Plaintiff of rights secured to him by the Fourth, and together with DOES 1-3, and each of them, intentionally deprived Plaintiff's rights under the Fourteenth Amendments to the United States Constitution in that Defendant LIU intentionally assaulted Plaintiff with deadly force without lawful justification or permissible cause, violated California Penal Code § 245 (felony assault with a deadly weapon), § 149 felony assault under color of law), and seized and arrested Plaintiff without probable cause for any criminal offense. Together with DOES 1-10, Defendant and each of them, joined in a meeting of minds to cover up LIU'S unlawful and unconstitutional use of deadly force and the commission of felonies against Plaintiff, engaged in a misprision and compounding of the felony assault under color of law by willfully engaging in a cover up conspiracy to violate these rights, in the

7

attempt to deceive the Los Angeles District Attorney. Plaintiff and and the public.

11.     Defendants, and each of them, carried out and perpetrated the mutually supportive conspiracy to deprive Plaintiff of his rights by participating in a corrupt effort to illegally seize and interfere with his right of redress manufactured, supported and promoted by defendants.

12.     As a proximate result of the aforesaid acts and omissions of Defendants, and each of them, Plaintiff sustained excrutiating physical and mental pain and shock to his nervous systems, together with fear, anxiety, torment, degradation and severe emotional distress.

13.     By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff incurred legal, medical and therapeutic expenses in an amount as proved.

14.     In addition, by reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff was prevented from attending to his usual occupations, and has suffered loss and impairment of earnings and employment opportunities all to his damage in an amount as proved.

15.     By reason of the aforementioned acts of Defendants, and each of them, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs hereinbefore mentioned and by virtue thereof, Plaintiff is indebted and liable for attorneys fees.

16.     The aforementioned acts and omissions of Defendants were committed by each of them knowingly, wilfully and maliciously, with the intent to harm, injure,

vex, harass and oppress Plaintiff with a conscious disregard of Plaintiffs constitutional rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants, and each of them, (except Defendant COUNTY) in an amount as proved.

## SECOND CAUSE OF ACTION
### (UNLAWFUL CUSTOM AND PRACTICE UNDER SECTION 1983)
### (By Plaintiffs Against Defendants County & LASD)

17.    Plaintiffs refer to and re-plead each and every allegation contained in paragraphs 1 through 16 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

18.    Defendant COUNTY is and at all times herein mentioned has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the Los Angeles Sheriffs Department (LASD) and its tactics, methods, practices, customs and usages related to narcotics investigations, internal investigations, personnel supervision and records maintenance.

19.    At all times herein mentioned, Defendants, and each of them, were employees acting under the COUNTY's and LASD's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers

who have demonstrated their corruption, frauds, dishonesty, bigotry, and numerous other serious abuses of their powers as peace officers in the employment of the COUNTY and LASD.

20.   Defendants COUNTY and LASD knowingly maintains and permits official *sub-rosa* policies or customs of permitting the occurrence of the kinds of wrongs set forth above, by deliberate indifference to widespread police abuses, failing and refusing to impartially and objectively investigate, discipline or prosecute peace officers who commit acts of criminal dishonesty and crimes of violence, each ratified and approved by COUNTY and LASD.

21.   The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by defendant COUNTY and LASD include, but are not limited to:

(1)   Defendant COUNTY and LASD had knowledge, prior to and since this incident, of repeated allegations of abuse and dishonesty misconduct toward detainees and arrestees; Specifically, COUNTY and LASD knew Defendants LIU, DOES 1-10, had in the past committed acts of abuse, corruption, fraud and dishonesty;

(2)   Defendant County and LASD had knowledge, prior to and since this incident, of similar allegations of abuse and dishonesty by Defendants, and turned a blind eye toward and refused to enforce established administrative procedures to insure the safety of detainees and arrestees;

(3)   Defendant COUNTY and LASD refused to adequately, or at all, discipline individual officers and employees known to have committed similar acts of abuse and misconduct and by their actions since the shooting of Plaintiff refused to hold Defendant LIU to account

and instead attempt to conceal the wrongful conduct;

(4)     Defendant COUNTY and LASD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by its peace officers;

(5)     Defendant COUNTY and LASD reprimanded, threatened, intimidated, demoted and fired officers who broke from the code of silence and courageously reported acts of abuse and dishonesty by other officers;

(6)     Defendant COUNTY and LASD covered up acts of misconduct, dishonesty and abuse by Los Angeles Sheriff Department employees and openly sanctioned a code of silence by and among officers;

(7)     Defendant COUNTY and LASD rewarded officers who displayed aggressive and abusive behavior;

(8)     Defendant COUNTY and LASD failed to adequately train and educate officers in the use of reasonable and proper force and failed to enforce the department's written regulations with respect to uses of force and regulations related to illegal, immoral and criminal misconduct;

(9)     Defendant COUNTY and LASD failed to adequately supervise the actions of officers under their control and guidance;

(10)   Defendant COUNTY and LASD condoned and participated in the practice of prosecuting known groundless criminal charges for the purpose of insulating the COUNTY, LASD and its officers from civil liability and reducing or dismissing criminal charges against individuals in return for release from civil liability;

(11)   Defendant COUNTY and LASD historically and to the present time, condones and encourages a conspiracy of silence among

its employees for the purpose of concealing and furthering wrongful and illegal conduct by its employees;

(12) Defendant COUNTY and LASD engaged in the practice and custom of withholding from criminal defendants, judges and prosecutors, exculpatory *Brady* evidence unfavorable to its officers in violation of law and the Constitution.

(13) Defendant COUNTY fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by October 19, 2021and thereafter, represented the unconstitutional policies, practices and customs of the COUNTY and LASD.

22. By reason of the aforesaid policies, customs, practices and usages, plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution were violated.

## THIRD CAUSE OF ACTION

### (FAILURE TO TRAIN AND SUPERVISE)

**(By Plaintiff Against Defendants, DOES 1-10 in their individual capacities)**

23. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 22 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

24. Defendants DOES 1-10 are sued in their individual capacities. Said defendants knew or reasonably should have known of their subordinates ongoing constitutional violations set forth above in the administration of the Field Services Division, Temple Station patrol deputies, including defendant LIU as well as the Homicide Investigation Division. Specifically, defendants knew or should have

known of repeated failures to properly investigate and discipline or prosecute deputies engaged in dishonest, immoral and criminal behavior which violated the constitutional rights of members of the public, including Plaintiff herein. Said failures to act to prevent constitutional misconduct by subordinates acquiesed, condoned and ratified the customs, practices and usages by such subordinates.

25. Said Defendants, and each of them, are sued for their own culpable actions and omissions in the training, supervision, oversight and control of subordinates including watch commanders and first level supervision at Temple Station and Homicide Divisionwhich actions demonstrated a reckless and callous indifference to the rights of persons such as plaintiff. Said defendants' actions, inactions and deliberate indifference set into motion the ultimate harm caused to plaintiff.

26. Plaintiff is informed and believes and thereon alleges that prior to the incident complained of herein, since at least 1992 and thereafter to the present time, DOES 1-10 and others charged with the administration of the Field Services Division and Homicide Division knew or reasonably should have known that employees of the Los Angeles County Sheriffs Department committed similar acts of unjustified violence, dereliction of duty, fraud, dishonesty and deliberate indifference to employee dishonesty and other serious forms of misconduct.

27. Plaintiff is informed and believes and thereon alleges that prior to the incident complained of herein in October 19, 2021, and as early as 1992, DOES 1-10 and others charged with the administration of the Field Services Division and Homicide Division knew and understood employee wrongdoing had been and continued to be covered up and failed to take corrective action to prevent prospective deputy wrongdoing and dishonest misconduct which are the proximate cause of

Plaintiff's damages.

28.    As the result of the supervisory, management and executive Defendants DOES 1-10's actions and omissions, amounted to the institutional repudiation of constitutional protections which became the moving force behind the damages done to Plaintiff.

29.    As a direct and proximate result of the foregoing, plaintiff is entitled to and demands damages against defendants jointly and severally, as recited in the First and Second Causes of Action, including, but not limited to general and special damages in accordance with proof.

## PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1.    For General damages according to proof;

2.    For Special damages according to proof;

3.    For Punitive damages as provided by law, in an amount to be proved against each individual Defendant;

4.    For attorney's fees pursuant to 42 U.S.C §1988;

5.    For Costs of suit;

6.    For such other and further relief as the Court may deem proper.

DATED:    March 2, 2023                THE BECK LAW FIRM

By_____
                    Thomas E. Beck
                    Attorneys for Plaintiff

14

## PLAINTIFFS' JURY DEMAND

Plaintiff hereby demands trial by jury.

DATED:    March 2, 2023                THE BECK LAW FIRM

By_____
Thomas E. Beck
Attorneys for Plaintiff